UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PETER BILOZUR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-3707** |
| **ROYAL DAIQUIRI'S INC., EDISON CHOUEST OFFSHORE, L.L.C., NORTH AMERICAN SHIPBUILDING, L.L.C. AND ABC INSURANCE COMPANY** | **SECTION: "C"** |

## ORDER AND REASONS

Before this Court is a Motion for Summary Judgment filed by Edison Chouest Offshore, L.L.C. ("ECO"). Plaintiff, Peter Bilozur ("Bilozur") opposes the motion. The motion is before the Court after oral argument. Having considered the memoranda of counsel, the record, the arguments and the applicable law, the Court finds that ECO's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

Bilozur began his employment with ECO on May 9, 2005, with his first hitch on the M/V SEACOR RELIANT. He disembarked from the vessel on June 7, 2005. When he left the vessel he was off-hitch and free to pursue whatever he wished. He decided to stay at the North American Shipbuilding ("NAS") dormitory in Larose, LA, where ECO employees can stay for free if space is available. From June 7, 2005 to June 10, 2005 at 5:30 p.m. Bilozur participated

in a free training program at the ECO facility.  This training program, the Standards of Training, Certification and Watchkeeping ("STCW"), was required by the United States Coast Guard ("USCG") for the job that Bilozur held at ECO.  Completing the class was a condition of his employment, however, he could have taken the class at any other USCG approved facility at his own cost.

After the STCW class ended on Friday, June 10, 2005, Bilozur went to Royal Daiquiri's.[1] He claims that he was there to have dinner and plan a fishing trip with a friend.  Supposedly, Bilozur arrived at Royal Daiquiri's at about 5:30 p.m. and by 11:00 p.m. he had consumed about four beers and one-half a shot of liquor.  The facts are disputed as to what happened next.  Bilozur claims that around 11:00 p.m. he felt that there was a hostile environment at Royal Daiquiri's and decided to leave.  However, witnesses claim that he had been harassing other bar patrons all night and was asked to leave.  Whether he left on his own accord or was asked to leave is immaterial.

When Bilozur left the bar, he got in his car and backed into another car in the parking lot.  Then he went back into the bar to find out who owned the other vehicle.  Supposedly, the damaged car was owned by Lorell Danos, a woman with whom Bilozur had trouble earlier in the night.  The police arrived and charged Bilozur with reckless operation of a vehicle.  However, he did not leave the bar at this point. He elected to stay and, some time thereafter, he was allegedly hit from behind in the neck.  He claims that when he awoke his neck was severely twisted.  Bilozur also claims that Danos then put her shoe in his face and threatened him.  He was

---

[1] Supposedly, there were two other ECO employees at the bar all night who were also staying at the NAS facility and had attended the STCW class.  There is no evidence concerning their specific employment with ECO.

subsequently transported to the hospital. When he finally arrived at Charity Hospital in New Orleans, Louisiana, the doctors discovered that his neck was broken and he is now a quadriplegic.

Bilozur claims that he intended to stay at the NAS dorm once the class was finished. At this time he was not schedule to return to the M/V SEACOR RELIANT until June 27, 2005 and he was not enrolled in any further training classes. Bilozur claims that he decided to stay in South Louisiana in case space became available in one of the training classes or to fill in if someone did not show up for a hitch. ECO contends that Bilozur was under no obligation to accept any work that was offered during this time although he was willing to do so.

Bilozur instituted this suit for his injuries against Royal Daiquiri's, ECO, NAS and Alea London, Ltd. ("Alea"). Bilozur claims that ECO is liable for maintenance and cure because he was a Jones Act seamen in the course and scope of his employment, i.e. in the service of the vessel, at the time that he sustained the injuries. He also claims that ECO is liable for negligence. He bases this argument on the fact that there were two other ECO employees at the bar when he was injured. He claims that if they were also in the course and scope of their employment and caused his injures, that ECO is vicariously liable. ECO filed a motion for summary judgement. It argues it is not liable to Bilozur for maintenance and cure or Jones Act negligence because he was not in the course and scope of his employment at the time of the incident.

**II. ANALYSIS**

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations."  *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

Here, ECO claims that there is no question of material fact regarding whether it owes Bilozur maintenance and cure or whether it is liable for Jones Act negligence.  While ECO does not dispute that Bilozur is a Jones Act seaman, ECO argues that Bilozur was not in the course and scope of his employment, i.e. in the service of the vessel, at the time of his injuries, and thus it is not liable for maintenance and cure.  Although Bilozur may have been willing to return to

4

the vessel, ECO claims that he was not required to do so.  Therefore, ECO argues that the lack of reciprocity of obligation between Bilozur and ECO at the time of the injury dictates that he is not entitled to maintenance and cure.  Furthermore, ECO suggests that the fact that Bilozur took the training class, which was required for his employment by the USCG, at ECO's facility based on convenience and cost during his off-hitch period does not mean that he was within the course and scope of his employment or the service of the vessel.  ECO argues that this was his choice and he could have gone to any USCG approved class. Furthermore, ECO claims that it was not negligent in any way.

Bilozur disagrees.  He argues that there are disputed issues of fact regarding whether he is entitled to maintenance and cure and whether ECO was negligent.  He claims that he was in the course and scope of his employment because ECO benefitted from his presences in South Louisiana and that he had to stay at the NAS facility.  He also argues that the fact that ECO paid travel expenses means that he was in the course and scope of his employment at the time of his injuries.  Furthermore, he argues that the other ECO employees at the bar may have been in the course and scope of their employment and contributed to his injuries so as to render ECO liable for Jones Act negligence.

### 1. MAINTENANCE AND CURE

A seaman who is injured or falls ill *in the service of a ship* is owed maintenance and cure by the shipowners.  See, *Guevara v. Maintenance Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 1046 (1996) (emphasis added).  Maintenance is a per diem living allowance, and cure is the payment for the seaman's necessary, therapeutic, medical and hospital expenses.  See, *Id.* at 1499; *Pelotto v. L&N Towing Co.,* 64 F.2d 396, 400 (5th Cir.

1979).  A seaman's right to maintenance and cure terminates when the seaman reaches maximum medical cure.  See, *Pelotto*, 604 F.2d at 400.  Maximum cure is reached "when it appears probable that further treatment will result in no betterment of the seaman's condition."  See, *Id.*; see also, *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 80 (5th Cir. 1990).  If further treatment "will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum medical cure has been achieved." *Pelotto*, 604 F.2d at 400.  A shipowner must have unequivocal medical evidence that maximum medical cure has been attained before terminating maintenance and cure for such reason.  See *Johnson*, 893 F.2d at 70; *Tullos v. Resource Dcrilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985).  When there are doubts or ambiguities as to a seaman's right to receive maintenance and cure, they are to be resolved in the favor of the seaman.  See, *Vaughn v. Atkinson*, 369 U.S. 527, 532 (1962); *Johnson*, 893 F.2d at 79.

      The Fifth Circuit has found the meaning of "course of employment" used in the Jones Act to be the same as "service of the ship" used in maintenance and cure cases.  See*, Daughdrill v. Diamond M. Drilling Co.,* 447 F.2d 781 (5th Cir. 1971), *cert. denied,* 405 U.S. 997 (1972).  In *Daughdrill,* the employee was killed in an accident on his way to work offshore.  The decedent traveled in one of his co-worker's personal cars from his home to work.  He was not paid any wages or expense for travel time.  During his time off, the decedent was free to do as he chose.  The Fifth Circuit reversed the judgment of the district court and concluded that the decedent was not in the course and scope of his employment for Jones Act purposes.  *Daughdrill*, 477 F.2d at 784.  Therefore, he would not have been in the service of the ship for maintenance and cure purposes either.

Furthermore, in *Moore v. Associated Pipeline Contractors*, 468 F.2d. 815 (5th Cir. 1972), a seaman who was killed in an automobile driven by a co-worker while returning to work after a union meeting was deemed outside the scope of his employment relationship the moment he left the barge. Similarly, the seaman in *Baker v. Ocean Systems, Inc.*, 454 F.2d 379 (5th Cir. 1972), was denied recovery against his employer for injuries sustained on shore because he was not answerable to the call of duty at the time of the injury, although he was willing to serve. Also, the seaman injured while going form work to home on off–duty time that was his own to spend was denied recovery in *Sellers v. Dixilyn Corp.*, 433 F.2d 466 (5th Cir. 1970).

In its motion for summary judgment, ECO analogizes the case at bar to some of these cases. It reasons that because Bilozur was off-hitch and not answerable to the call of duty at the time of the incident that he was not in the service of the vessel. To show that Bilozur was not in the service of the vessel, ECO also points to the fact that he was only paid when he was on the vessel and that when he was not on the vessel he was free to do whatever he pleased. Furthermore, ECO argues that the court only allows non-blue water seaman to recover for shoreside injuries in limited situation where the seaman was acting pursuant to some employer directive or when the employer was the recipient of some benefit as a consequence of the seaman's shoreside activity. *Foret v. CO-MAR Offshore,* 508 F.Supp. 980, 982 (E.D.La. 1981).

Bilozur, on the other hand, argues that he was acting pursuant to an employer directive and that the employer benefitted from his shoreside activity. He claims that he had to stay at the NAS facility and that ECO benefitted form his presence in South Louisiana because he was there to take a voluntary class if space became available or to fill in if someone else did not show up for work. Furthremore, he argues that he was in the course of his employment because ECO

7

would have paid him for his travels had he chosen to spend his off-hitch time elsewhere.

Bilozur's arguments are unpersuasive. The facts show that ECO placed no restrictions on his movement once he disembarked from the vessel. He was not required to stay at the NAS facility. ECO simply offered this housing as an option for its employees. It was not mandatory that ECO employees stay there. It was only a perk of their employment. Furthermore, ECO did not require Bilozur to take the STCW class at its facility. He could have gone to any USCG approved class anywhere at his own expense.

Bilozur's argument that he was in the course of his employment is even less persuasive considering the fact that the class was over and he was not scheduled for another class until July of 2005 or to work again until June 21, 2005. The fact that he may have been willing to work or to take another class does not place him in the service of the vessel. As stated above, the Fifth Circuit has found that a simple willingness to serve does not place a seaman in the course and scope of his employment. See, *Baker*, 454 F.2d at 980-82. Thus, although Bilozur was willing to serve ECO, he was not obligated to do so. There was no reciprocity of obligation. He even admits that he was free to do whatever he chose once he disembarked from the vessel. Therefore, Bilozur was not in the service of the vessel once he left it.

Furthermore, even if he was in the service of the vessel while he took the training course, he certainly was not once the class ended at 5:30 p.m. on Friday, June 10, 2005. He was not scheduled for another class or work during the rest of his off-hitch time. He was not in the service of the vessel when he went to the bar and he was under no obligation to return to work. His time was his own and ECO should not have to pay for the consequences of his actions.

## 2. JONES ACT NEGLIGENCE

Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injuries. *Gautreaux v. Scurlock Marine*, 107 F.3d 331, 335 (5th Cir. 1997). The Jones Act is liberally construed in favor of the seaman. *Lamon v. Standard Oil Co.*, 117 F.Supp. 831, 834 (E.D.La. 1954). However, liability does not attach to a Jones Act employer for injuries suffered by its employees absent proof that the injury occurred during the course of employment, that there was negligence on the part of the employer, and that such negligence was the cause of the injury. *Hernandez v. Trawler Miss Verite May, Inc.*, 189 F.3d 432, 436 (4th Cir. 1999) (citing *Gautreaux*, 107 F.3d at 3350).

As stated above, in *Daughdrill* the Fifth Circuit found that "course of employment" used in the Jones Act has the same meaning as the phrase "service of the ship" used in maintenance and cure cases. Thus, if Bilozur was not in the service of the ship for maintenance and cure purposes, he was not in the course and scope of his employment either. Thus, ECO is not liable for Jones Act negligence.[2]

---

[2] The Court also rejects the argument that the presence of the other ECO employees at Royal Daiquiri's points to ECO negligence. There are no allegation that those ECO employees in any way contributed to Bilozur's injuries.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that ECO's Motion for Summary Judgment is **GRANTED**.

New Orleans, Louisiana this 22nd day of November, 2006.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE